[No. 37022. Department One. April 9, 1964.]

LILENQUIST MOTORS, INC., *Appellant,* v. ALICE J. MONK, *Respondent.**

*R. G. Schimanski,* for appellant.

*Whitmore, Vinton, Powers & Manion,* for respondent.

ROSELLINI, J.—The plaintiff in this action contracted to sell two Mack trucks, with trailers, to one Jack Carnagey, a son of the defendant. The defendant guaranteed payment of the purchase price in each instance. One of these sales was never consummated; and we shall refer only to the contract for the sale of the truck which was actually delivered to Carnagey. It provided that, in the event of default, the plaintiff might repossess the vehicle and sell it; and Carnagey agreed to pay any deficiency remaining after payment of costs of sale. A promissory note was given in lieu of a down payment on both trucks. The defendant was a cosigner of this note.

*Reported in 390 P. (2d) 1007.

Carnagey defaulted, and the plaintiff brought separate suits against him in the state of Idaho, on the note and on the contract, and attached the truck. At about the same time, the plaintiff commenced this law suit against the defendant guarantor in King County. She answered and cross-complained, asking for a rescission of the contract, on the ground of misrepresentation. Her allegations were denied by the plaintiff.

The cause was tried to the court, which sustained a challenge to the sufficiency of the evidence at the close of the plaintiff's case; and this appeal followed.

The judgment of the trial court was based upon its finding that the Idaho suits had been compromised and settled by the parties; and the question before this court is whether the trial court correctly construed a written agreement which was entered into between the parties to those suits, that is, the plaintiff in this action and Jack Carnagey, the purchaser of the truck.

The agreement in question recited the commencement of the law suits; that, if judgment were entered as prayed for, Carnagey would be insolvent and threatened with voluntary or involuntary bankruptcy, and that it was to the mutual advantage of the plaintiff and Carnagey that he not be forced into insolvency or bankruptcy.

It was agreed that the plaintiff might take default judgments against Carnagey; that the plaintiff would sell the truck which was the subject matter of the conditional-sale contract on a sheriff's sale and apply the net proceeds to the amount claimed due from Carnagey. The plaintiff agreed to forbear any further action against Carnagey and covenanted not to levy further execution against him for the deficiency. Carnagey released all claims which he might have against the plaintiff; but the plaintiff reserved all of its rights of action, claims, demands and suits against Alice J. Monk, the defendant in this action.

We think the trial court was in error in holding that this agreement constituted a compromise and settlement of the plaintiff's claim against Carnagey. It does not purport to be such. but merely an agreement not to execute except

upon the property specified in the agreement; and the plaintiff expressly reserved its rights against the surety. It was, in other words, a partial release of the principal.

 The general rule is that a release of the principal does not release the surety if there is in the instrument which releases the principal an express reservation of the creditor's rights against the surety. *Moore v. Dark,* 52 Wn. (2d) 555, 327 P. (2d) 429; *Davis v. Gutheil,* 87 Wash. 596, 152 Pac. 14; Restatement, Security § 122, p. 322; Arant, Suretyship § 50, p. 183. See also *Johnson v. Stewart,* 1 Wn. (2d) 439, 96 P. (2d) 473; *North Pac. Public Ser. Co. v. Clark,* 185 Wash. 132, 52 P. (2d) 1255.

The application of the rule in cases where the release is unreasonable and "not in ordinary course of business" is criticized by Arant (see discussion, pages 184, 185), on the ground that such a release is not ordinarily within the contemplation of the parties at the time a contract of suretyship is entered into—it being the understanding that the creditor will look to the surety for payment only after he has endeavored and failed to collect from the principal.

There is, however, no suggestion that the release was unreasonable in this case. The indication is that it was given in order to shorten litigation and effect a sale of the truck before it depreciated further, and also to forestall the possible loss of this security in a bankruptcy proceeding. There is no showing and no contention that the plaintiff could have obtained a greater satisfaction of its claim out of the property of the principal had it not given the release. Insofar as the record reveals, the defendant was in no way harmed as a result of the course of action taken by the plaintiff and Carnagey.

 Much significance was attached by the trial court to the fact that Carnagey relinquished whatever claims he might have had against the plaintiff. The fact that there was consideration for the release does not convert it to a compromise and settlement. Consideration is ordinarily necessary to effect a binding release. See *Arndt v. Manville,* 53 Wn. (2d) 305, 333 P. (2d) 667. Nor was the defendant in this action prejudiced by the fact that her principal relin-

quished his claims. Since she was not a party to the Idaho suits, the default judgments taken in those actions do not operate to deprive her of any of her defenses as a surety. The following is the rule, as set forth in Restatement, Security § 139, p. 372:

"(3) Where, in an action by a creditor against a principal, judgment is obtained by default or confession against the principal, and the creditor subsequently brings an action against the surety, proof of the judgment against the principal is evidence only of the fact of its rendition."

In the comment to this subsection, p. 375, it is said:

". . . Such a judgment against the principal does not create a rebuttable presumption of the principal's liability, in an action between creditor and surety."

Thus, the defendant in this action may present whatever defenses she may have and is in no way foreclosed by the release and the default judgment taken pursuant to it.

The judgment is reversed and the cause remanded for a new trial.

OTT, C. J., HUNTER and HALE, JJ., and MURRAY, J. Pro Tem., concur.